**TIM CUNNINGHAM, OSB #100906**
timcunningham@dwt.com
**DAVIS WRIGHT TREMAINE LLP**
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
Telephone:  (503) 241-2300
Facsimile:  (503) 778-5299

**LINDA STEINMAN,** *Pro Hac Vice*
lindasteinman@dwt.com
**DAVIS WRIGHT TREMAINE LLP**
1251 Avenue of the Americas, 21st Floor
New York, New York 10020-1104
Telephone:  (212) 603-6409
Facsimile:  (212) 489-8340

Attorneys for Defendant Penguin Random House


IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **CHARLES AUGUSTUS STEEN, III,**<br><br>                **PLAINTIFF**,<br><br>v.<br><br>**DR. SEUSS ENTERPRISES L.P. and PENGUIN RANDOM HOUSE,**<br><br>                **DEFENDANTS**. | Case No. 3:17-cv-01765-SB<br><br>**DEFENDANT PENGUIN RANDOM HOUSE'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>**Request for Oral Argument** |

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

4820-2803-2346v.7 3910039-000228

# TABLE OF CONTENTS

**Page**

L.R. 7-1(A) CERTIFICATION ............................................................................ 1

MOTION .............................................................................................................. 1

PRELIMINARY STATEMENT ........................................................................... 1

FACTUAL BACKGROUND ............................................................................... 4

ARGUMENT ....................................................................................................... 8

I.    THE COMPLAINT SHOULD BE DISMISSED BECAUSE THE WORKS ARE NOT SUBSTANTIALLY SIMILAR IN PROTECTED EXPRESSION ................................. 8

    A.    Copyright liability requires plausible allegations of copying of protectable expression ............................................................................ 9

    B.    There is no infringement of protectable expression ............................................. 14

        1.    Plaintiff cannot claim protection in basic plot ideas or *scenes a faire* ...... 16

        2.    Plaintiff's work is not substantially similar to *Daisy-Head Mayzie* ......... 18

            a.    The Plots Are Not Similar ............................................................ 18

            b.    The Characters Are Not Similar ................................................... 20

            c.    The Themes Are Different ............................................................ 23

            d.    The Dialogue Is Different ............................................................ 24

            e.    The Mood Is Different ................................................................. 26

            f.    The Setting Is Different ................................................................ 26

            g.    The Pace and Sequence of Events Are Different ............................ 27

        3.    Plaintiff's complaint offers nothing more than random, scattered similarities unprotected by copyright ......................................... 28

CONCLUSION .................................................................................................... 28

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

# TABLE OF AUTHORITIES

**Page**

**Federal Cases**

*Acker v. King*,
46 F. Supp. 3d. 168 (D. Conn. 2014) ....................................................................11

*Allen v. Scholastic, Inc.*,
739 F. Supp. 2d 642 (S.D.N.Y. 2011)....................................................................11

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)..................................................................................................9

*Benay v. Warner Bros. Entm't*,
607 F.3d 620 (9th Cir. 2010) ..........................................................................12, 13, 16, 27

*Berkic v. Crichton*,
761 F.2d 1289 (9th Cir. 1985) ...................................................................... *passim*

*Brown v. Perdue*,
No. 04 Civ. 7417 (GBD), 2005 WL 1863673 (S.D.N.Y. Aug. 4, 2005), *aff'd*,
177 F. App'x 121 (2d Cir. 2006) ...........................................................................11

*Campbell v. Walt Disney Co.*,
718 F. Supp. 2d 1108 (N.D. Cal. 2010) .................................................................10

*Christenson v. FLTI*,
No. 6:13-cv-00254-AA, 2013 WL 5781276 (D. Or. Oct. 23, 2013) ................................10, 14

*Christianson v. West Pub. Co.*,
149 F.2d 202 (9th Cir. 1945) .............................................................................1, 10

*Dellar v. Samuel Goldwyn, Inc.*,
150 F.2d 612 (2d Cir. 1945)......................................................................................1

*DuckHole, Inc. v. NBC Universal Media LLC*,
No. CV 12-10077 BRO, 2013 WL 5797279 (C.D. Cal. Sept. 6, 2013) ..................................10

*Dunn v. Brown*,
517 F. Supp. 2d 541 (D. Mass. 2007) ....................................................................12

*Dunn v. Brown*,
No. 10 Civ. 11383 (FDS), 2011 WL 4527449 (D. Mass. Sept. 26, 2011)..............................11

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

4820-2803-2346v.7 3910039-000228

*Erickson v. Blake*,
    839 F. Supp. 2d 1132 (D. Or. 2012) ............................................................. *passim*

*Funky Films, Inc. v. Time Warner Entm't Co., L.P.*,
    462 F.3d 1072 (9th Cir. 2006) ..................................................................3, 9, 13

*Gadh v. Spiegel*,
    No. CV 14-855-JFW, 2014 WL 1778950 (C.D. Cal. Apr. 2, 2014)....................10

*Kerr v. New Yorker Magazine*,
    63 F. Supp. 2d 320 (S.D.N.Y. 1999)................................................................16

*Kouf v. Walt Disney Pictures & Television, Inc.*,
    16 F.3d 1042 (9th Cir. 1994) ..........................................................9, 12, 14, 28

*Litchfield v. Spielberg*,
    736 F.2d 1352 (9th Cir. 1984), *cert denied*, 470 U.S. 1052 (1985)........................14

*Marquardt v. King*,
    No. 10 Civ. 3946 (JEC), 2011 WL 5042054 (N.D. Ga. Aug. 10, 2011) ................11

*Muromura v. Rubin Postaer & Assocs.*,
    No. CV 12-09263 DDP (AGRx), 2014 WL 4627099, at *3--*4 (C.D. Cal.
    Sept. 16, 2014) ...............................................................................................10

*Narell v. Freeman*,
    872 F.2d 907 (9th Cir. 1989) ...........................................................................25

*Olson v. Nat'l Broad. Co., Inc.*,
    855 F.2d 1446 (9th Cir. 1988) ....................................................................13, 14

*Olson v. Tenney*,
    466 F. Supp. 2d 1230 (D. Or. 2006) ...................................................................9

*Rentmeester v. Nike, Inc.*,
    No. 3:15-cv-00113-MO, 2015 WL 3766546 (D. Or. June 15, 2015) ....................10

*Rice v. Fox Broadcasting Co.*,
    330 F.3d 1170 (9th Cir. 2003) ...........................................................................11

*Scott v. Meyer*,
    No. 09 Civ. 06076 (ODW), 2010 WL 2569286 (C.D. Cal. June 21, 2010) ...........11

*Thomas v. Walt Disney Co.*,
    337 F. App'x 694 (9th Cir. 2009) .......................................................................10

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main ⋅ (503) 778-5299 fax

4820-2803-2346v.7 3910039-000228

*Walker v. Time Life Films, Inc.*,
 784 F.2d 44 (2d Cir. 1986) ........................................................................13

*White v. Twentieth Century Fox Corp.*,
 572 F. App'x 475 (9th Cir. 2014) ...............................................................10

*Wild v. NBC Universal*,
 513 F. App'x 640 (9th Cir. 2013) ...........................................................10, 14

*Zella v. E.W. Scripps Co.*,
 529 F. Supp. 2d 1124 (C.D. Cal. 2007) .....................................................10

**Federal Statutes**

17 U.S.C. § 102 ......................................................................................................11

17 U.S.C. § 505 ......................................................................................................28

**Rules**

Fed. R. Civ. P. 12(b)(6) ............................................................................................1

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

4820-2803-2346v.7 3910039-000228

## L.R. 7-1(A) CERTIFICATION

Pursuant to L.R. 7-1(a), counsel for defendant Penguin Random House conferred telephonically with *pro se* plaintiff Charles Augustus Steen III on January 8, 2018.  The parties were unable to resolve the issues presented in this motion.

## MOTION

Pursuant to Fed. R. Civ. P. 12(b)(6), defendant Penguin Random House ("Random House") moves the Court for an order dismissing plaintiff's complaint with prejudice on the ground that the complaint fails to state a claim upon which relief can be granted.  In support of this Motion, Random House relies upon the pleadings and exhibits on file, the supporting Memorandum, and the accompanying declaration of Tim Cunningham filed concurrently herewith.

## PRELIMINARY STATEMENT

This lawsuit is a classic example of "that obsessive conviction, so frequent among authors . . . that all similarities between their works and any others which appear later must inevitably be ascribed to plagiarism."  *Dellar v. Samuel Goldwyn, Inc.*, 150 F.2d 612, 613 (2d Cir. 1945).  A comparison of the two literary works at issue immediately makes clear that they differ radically in their plots, themes, characters and mood, and thus that Plaintiff cannot state a claim for copyright infringement.  Courts in this Circuit have not hesitated to dismiss similarly deficient claims with prejudice on a motion to dismiss: "There is ample authority for holding that when the copyrighted work and the alleged infringement are both before the court, capable of examination and comparison, non-infringement can be determined on a motion to dismiss." *Christianson v. West Pub. Co.*, 149 F.2d 202, 203 (9th Cir. 1945).

Page 1 - DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

4820-2803-2346v.7 3910039-000228

Plaintiff Charles Augustus Steen III ("Plaintiff") is the author of *The Pains of Being Pure at Heart* (Compl. Ex. 1a), a sad tale about a man with a hole in his head, who dies trying to save his dog in a river.  Dr. Seuss is the author of *Daisy-Head Mayzie*, initially published in 1995 (Compl. Ex. 8a) —a typically zany, classic-Seuss parable about a naïve girl who sprouts a flower on her head.  Although Plaintiff claims that *Daisy-Head Mayzie* wrongfully copies his story, he does not—and cannot—claim that *Daisy-Head Mayzie* copied the actual language from his book.  Instead, he premises his claim of infringement on a series of highly abstract ideas and stock scenes that cannot be used to establish an actionable copyright LLP claim.  The law in this Circuit is clear that "[n]o one can own the basic idea for a story.  General plot ideas are not protected by copyright law; they remain forever the common property of artistic mankind."  *Berkic v. Crichton*, 761 F.2d 1289, 1293 (9th Cir. 1985).  Likewise, "[e]xpressions that are standard, stock, or common to a particular subject matter or medium are not protectable [elements] under copyright law.  Such *scenes a faire* are . . . common in literary or dramatic works, in which certain themes or character types flow directly from common plot ideas." *Erickson v. Blake*, 839 F. Supp. 2d 1132, 1137 (D. Or. 2012) .

Plaintiff fundamentally misconceives the breadth of copyright protection.  The fact that both works tell a tale emphasizing that fame and fortune do not buy happiness is nothing more than an unprotectable idea.  Further, Plaintiff *admits* that he cannot base his claim on the fact that both protagonists, at some point in the story, sprout flowers from their head.  Plaintiff concedes that this idea is not original with him and, in fact, was used by Dr. Seuss long before Plaintiff wrote his story.  Yet he asserts copyright protection for *scenes a faire* and other ideas flowing directly from that admittedly unprotected story element.  Copyright protection does not go so far.

Page 2 - DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

No claim for copyright infringement can survive where, as here, Plaintiff cannot show that the actual *expression* in the works is substantially similar in "plot, themes, dialogue, mood, setting, pace, characters, [or] sequence of events…." *Funky Films, Inc. v. Time Warner Entm't Co., L.P.*, 462 F.3d 1072, 1077 (9th Cir. 2006) (internal quotation marks and citations omitted). Comparison of these aspects of plaintiff's story and *Daisy-Head Mayzie* quickly reveals that the two works are highly *dissimilar*.

*Daisy-Head Mayzie* is a playful, simple tale about a young girl's brief rocket to fame and fortune as a result of the daisy growing from her head. Mayzie quickly realizes that fame and fortune are not what they are cracked up to be, and the love of her friends and family is more important than being a star. At the end, she returns to her classroom and resumes her regular life. *The Pains of Being Pure at Heart*, in contrast, is a dark, sorrowful story about Lukus Loo, who, as a boy, loves connecting with nature and playing, but is ruthlessly taunted by his classmates for the hole in his head. Lukus Loo struggles throughout his life to find a balance between his thirst for knowledge and power and his childhood loves, and eventually becomes a powerful king who cares about nothing at all. When he finally determines he has become dead inside and re-discovers play and nature, flowers sprout on his head, but he dies tragically shortly thereafter. The story ends with a poem glorifying "nature's sweet art." In their protectable literary elements, such as plot, character, theme and mood, the two books could not be more different. Most particularly the flower on the top of the head idea plays a different role in each work (appearing only at the end of Plaintiff's work but throughout the Dr. Seuss work) and symbolizes two different concepts (embracing nature in plaintiff's work, signifying individuality in the Dr. Seuss work).

Page 3 - DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Plaintiff has pled only one claim, namely Copyright Infringement of his work by the First Version (and only the First Version) of *Daisy-Head Mayzie.*  A side-by-side comparison of these works themselves is the only relevant evidence necessary to determine whether they are substantially similar in protectable expression—and they are not.  In order to grant Random House's motion, the Court need not consider the many irrelevant allegations in the Complaint regarding the supposed history of the discovery of the *Daisy-Head Mayzie* manuscript, the *Daisy-Head Mayzie* television show, the recently-updated version of the book based on Dr. Seuss's original sketches, Plaintiff's views regarding the publication of Dr. Seuss books after his death or Plaintiff's brief references to other legal theories.  No determination of the truth or falsity of these allegations need be considered in order to dispose of the sole claim in this case.  Nothing can alter the fact that the two works at issue are simply not substantially similar in their protected expression.

## FACTUAL BACKGROUND

All parties agree that Random House published the First Version of *Daisy-Head Mayzie* in 1995 and that the First Version was registered with the Copyright Office that same year.  Complaint, Dkt. 1 ("Compl.") p. 134.[1]  As Plaintiff acknowledges, the First Version of the book was released in conjunction with an animated television special by Hanna-Barbera and it used illustrations based on the television special, rather than on original drawings and text made by Dr. Seuss before his death in 1991.  *See* Compl. ¶ 34 and pp. 296-303.  In 2016, Random House released a new version of *Daisy Head Mayzie* that incorporated Dr. Seuss's original drawings

---

[1] Plaintiff's Exhibits are consecutively paginated with the Complaint and not separately-filed by Exhibit.  For example, Docket number 1-2 contains Exhibits "I-a", "I-b," and Exhibits 2-7.  For ease of locating particular citations, Random House cites to the page number of the Complaint, *i.e.* Compl. p. 90, when citing to Plaintiff's Exhibits.

Page 4 - DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

and text (the "2016 Version").  Compl. ¶ 123; *see also id.* pp. 296-303 (explaining the differences between the two versions).  The 2016 Version is not the subject of Plaintiff's copyright infringement claim.[2]

Similarly, Random House does not challenge that Plaintiff created *The Pains of Being Pure at Heart* and registered his manuscript of that work with the Copyright Office in 1991.  Compl. p. 88 (Plaintiff's registration).[3]  Nor—*for purposes of this motion only*—does Random House dispute Plaintiff's claim that Dr. Seuss had access to Plaintiff's Work.[4]  Thus, the instant motion to dismiss can be decided simply by way of comparison of the two books themselves, both of which are included as exhibits to Plaintiff's complaint.[5]

## The Two Works

*The Pains of Being Pure at Heart* tells the story of Lukus Loo from childhood, to adulthood, and eventually death.  Compl. pp. 88-126.  Born without a top on his head, Lukus Loo is a bright student who enjoys nature and animals, but is picked on by his peers.  He writes a

---

[2] *See* Compl. p. 49 (un-numbered allegation stating all "infringing elements" are removed from the 2016 Version); *see also* Compl., Prayer (seeking relief for "he [sic] first version of Daisy-Head Mayzie 1995-2016").  Whether Plaintiff alleges the Hanna-Barbera animated television show infringes his copyright is unclear, but in any event, Plaintiff does not, and cannot, allege that Random House distributed that work.

[3] It appears from Amazon that Plaintiff's book was first self-published in 2015. https://www.amazon.com/Pains-Being-Pure-Heart/dp/0615332935

[4] For the record, however, Defendants deny having access to Plaintiff's work and note that Plaintiff's allegations of access are premised on a highly speculative and convoluted chain of events starting with the alleged submission of Plaintiff's work to an institute with which an author who later worked on Dr. Seuss books after his death was affiliated. Compl. ¶¶ 2, 29.

[5] Although the First Version of *Daisy-Head Mayzie* is included as Exhibit 8a to Plaintiff's Complaint, Compl. pp. 137-185, an additional, more easily-readable color copy is attached to the Declaration of Tim Cunningham as Exhibit 1.  In ruling on this motion, the "court may . . . consider materials that are attached to the complaint and materials on which the plaintiff's case necessarily relies where the authenticity of those materials is not disputed."  *Erickson v. Blake*, 839 F. Supp. 2d 1132, 1135 (D. Or. 2012) (citing *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001)).

Page 5 - DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

poem about his teacher's bird, which is locked in a cage, but his classmates mock him. His classmates' constant taunting causes Lukus Loo significant distress. Lukus Loo seeks ever more frequent refuge with his philosopher friend Plutus Plutarch outside in nature. Planting flowers with Plutus Plutarch makes Lukus Loo feel better, and it occurs to him that he would feel much better if he filled his head with dirt. He does so, and then dedicates himself to learning as much as possible—forgetting about simple pleasures like playing outside.

Lukus Loo heads to college, where he continues to study, reads every book in the library, and is accepted by his peers, now that his head has a top. Lukus Loo eventually loses track of who he was as a child, bragging when he wins a spelling bee, and then becoming very wealthy as a result of his increasing wisdom. Once he knows practically everything, the townspeople name him king. As king, Lukus Loo becomes greedy and loses further touch with his past pleasures; he does not care when his dog runs away and insists he needs nothing at all. He spends his days reading, and eventually becomes mean and mad, hating everything—including nature itself.

One day Lukus Loo becomes very distressed, storms out of his kingdom and walks in the rain. He encounters Plutus Plutarch, and they see the bird Lukus Loo had previously written a poem about, dead on the ground. Lukus Loo sees this as a symbol, realizing that he himself is dying inside, and the next day he awakens with flowers growing out of his head. He rejoices, throwing off his crown and returning to the playful activities that brought him such joy as a child. He stops caring about what the townsfolk think of him, gives up his vanity and remembers how he was as a child. He resigns as king, and ventures back out into nature, walking for days in the outdoors, feeling great. Lukus Loo recognizes that everything in nature is connected, then suddenly discovers that his forgotten dog has fallen into a river. Desperate to save the dog he

Page 6 - DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main ∙ (503) 778-5299 fax

4820-2803-2346v.7 3910039-000228

had once written off, Lukus Loo bravely plunges into the river, but dies trying to save his dog, who manages to escape.  At Lukus Loo's funeral, the townspeople mourn his loss.  Once each year, in order to honor Lukus Loo, the townspeople wear flowers on their head.  After Lukus Loo's death, his old friend Plutus Plutarch finds a poem Lukus Loo wrote.  The story ends with a poem attributed to Lukus Loo instructing all mankind to stay true to themselves and enjoy nature.

The First Version of Dr. Seuss' *Daisy-Head Mayzie*, narrated by the Cat in the Hat, tells the story of Mayzie McGrew, who, while sitting in class, feels a daisy sprouting out of her head. Cunningham Decl. Ex. 1, pp. 1-54.  After her classmates notice the daisy, her teacher (Miss Sneetcher) approaches and insists the daisy must be a trick, but after trying to pull the daisy from Mayzie's head, realizes the daisy is real.  After the children in the class start chanting "Daisy-Head! Daisy-Head! DAISY-HEAD MAYZIE!," Ms. Sneetcher carries Mayzie to the principal's office.  The principal, a nerdy gentleman, attempts to discern the source of the daisy, but cannot find an answer despite searching all of his books.  While the principal is searching for answers, Mayzie realizes the daisy is drooping, and the principal determines the problem may solve itself—if the daisy simply dies and falls off Mayzie's head.  But suddenly, the principal realizes that as the daisy is wilting, so is Mayzie herself.  The daisy was physically connected to Mayzie, so the principal orders Ms. Sneetcher to water the daisy, restoring Mayzie's health as well. Realizing the difficulty of the situation, the principal has Mayzie placed in a room while he contacts Mayzie's parents, the town doctor, and the local florist.  While the adults are convening at the school, a swarm of bees discovers Mayzie's daisy and chases her outside, until Officer Thatcher snatches the bees out of the air with his cap, and takes Mayzie back to the school.

Page 7 - DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

After their return, the various adult characters (including the florist, the doctor, and the newly-arrived mayor) all debate how to handle the situation, with the mayor promising to ban daisies if he's re-elected.  Then Finagle the Agent appears and convinces Mayzie to sign a talent contract—assuring her that the daisy on her head will make her a star.  Against her mother's and the principal's advice, Mayzie (and the daisy) sign the contract, and with the help of the agent, Mayzie becomes famous, and daisy-head fever becomes a phenomenon, with people wearing daisy-head hats and buying daisy-head branded products following Mayzie's rise to stardom.  Mayzie (and Finagle) quickly become rich, but Mayzie realizes she does not have the love of friends or family to go with her money.  Convinced that nobody she left behind in town loves her, Mayzie runs off in sorrow.  As Mayzie begins talking about love, the petals of the daisy begin to fall off and since, "when love is in doubt, the job of a daisy is Try and Find out!," Mayzie counts the petals, reciting "they love her, they love her not" —until the last petal assures Mayzie that her friends and family at home do love her.  Mayzie heads back to town, and the Cat in the Hat informs the reader that Mayzie returned to school, and the daisy stayed away—most of the time.  The book closes with the daisy briefly resurfacing, and Mayzie realizing it does not bother her at all.

## ARGUMENT

## I.    THE COMPLAINT SHOULD BE DISMISSED BECAUSE THE WORKS ARE NOT SUBSTANTIALLY SIMILAR IN PROTECTED EXPRESSION

This motion turns on a single issue: whether the First Version of *Daisy-Head Mayzie* is substantially similar to the protected elements of expression in *The Pains of Being Pure at Heart*. Under well-settled Ninth Circuit law, the answer is no.

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

4820-2803-2346v.7 3910039-000228

### A. Copyright liability requires plausible allegations of copying of protectable expression

To state a claim for relief, Plaintiff must state plausible allegations of (1) ownership of a valid copyright; (2) defendant's access to the copyrighted work; and (3) substantial similarity between the copyrighted work and the defendant's work.  *Olson v. Tenney*, 466 F. Supp. 2d 1230, 1235 (D. Or. 2006) (citing *Litchfield v. Spielberg*, 736 F.2d 1352, 1355 (9th Cir. 1984), *cert denied*, 470 U.S. 1052 (1985)); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  For the purposes of this motion only, Random House does not contest the allegations Plaintiff offers to prove the first two elements of his claim.  His claim still fails as a matter of law because Plaintiff cannot establish that the works are substantially similar.

In deciding a motion to dismiss in a copyright infringement case, courts in the Ninth Circuit engage in the "extrinsic test" for substantial similarity.  *Erickson*, 839 F. Supp. at 1135 (citing *Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1162 (9th Cir. 1977)); *Kouf v. Walt Disney Pictures & Television, Inc.*, 16 F.3d 1042, 1045 (9th Cir. 1994).  The extrinsic test is an objective test that depends on specific criteria which can be listed and analyzed rather than on the subjective response of a trier of fact. "The extrinsic test focuses on articulable similarities between the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events in the two works."  *Funky Films, Inc. v. Time Warner Entm't Co., L.P.*, 462 F.3d 1072, 1077 (9th Cir. 2006) (internal quotation marks and citations omitted); *see also Berkic*, 761 F.2d at 1292.  Only if the court determines that the works are substantially similar after application of the demanding extrinsic test does a factfinder need to consider the subjective, intrinsic test.  *See, e.g., Funky Films*, 462 F.3d at 1077.

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

The question of "whether there is sufficient objective similarity under the extrinsic test …

may be decided by a Court as a matter of law on a motion to dismiss." *Erickson*, 839 F. Supp.

2d at 1135; *see also Christianson*, 149 F.2d at 203 ("There is ample authority for holding that

when the copyrighted work and the alleged infringement are both before the court, capable of

examination and comparison, non-infringement can be determined on a motion to dismiss.");

*White v. Twentieth Century Fox Corp.*, 572 F. App'x 475, 477 (9th Cir. 2014); *Wild v. NBC*

*Universal*, 513 F. App'x 640, 642 (9th Cir. 2013); *Thomas v. Walt Disney Co.*, 337 F. App'x

694, 694 (9th Cir. 2009) (affirming dismissal because "as a matter of law, [plaintiff's] literary

work was not 'substantially similar' to defendants' animated movie").[6] Where the court

determines two works are not substantially similar under the extrinsic test, dismissal with

prejudice is appropriate. *Wild* 513 F. App'x at 642 (affirming dismissal without leave to amend

where works were not substantially similar); *Campbell*, 718 F. Supp.2d at 1116 ("Since [lack of

---

[6] District courts—in this district and elsewhere in the Ninth Circuit—also routinely dismiss copyright claims on a Rule 12 motion. *E.g. Rentmeester v. Nike, Inc.*, No. 3:15-cv-00113-MO, 2015 WL 3766546, at *2 (D. Or. June 15, 2015) ("Whether there is sufficient objective similarity under the extrinsic test is a question that may be decided by the court as a matter of law on a motion to dismiss by viewing the works."); *Christenson v. FLTI*, No. 6:13-cv-00254-AA, 2013 WL 5781276 at *2-*3 (D. Or. Oct. 23, 2013); *Muromura v. Rubin Postaer & Assocs.*, No. CV 12-09263 DDP (AGRx), 2014 WL 4627099, at *3--*4 (C.D. Cal. Sept. 16, 2014) (dismissing copyright claim on Rule 12 motion after applying extrinsic test); *Gadh v. Spiegel*, No. CV 14-855-JFW (PJWx), 2014 WL 1778950, at *6 (C.D. Cal. Apr. 2, 2014) (same); *DuckHole, Inc. v. NBC Universal Media LLC*, No. CV 12-10077 BRO (CWx), 2013 WL 5797279, at *5-*9 (C.D. Cal. Sept. 6, 2013) (noting that "[t]he Ninth Circuit has long held that non-infringement can be determined on a motion to dismiss" and finding that works were not substantially similar); *Campbell v. Walt Disney Co.*, 718 F. Supp. 2d 1108, 1116 (N.D. Cal. 2010); *Zella v. E.W. Scripps Co.*, 529 F. Supp. 2d 1124, 1139 (C.D. Cal. 2007) ("For fifty years, courts have followed this rather obvious principle and dismissed copyright claims that fail from the face of the complaint (and in light of all matters properly considered on a motion to dismiss)." (collecting cases)).

Page 10 - DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main • (503) 778-5299 fax

4820-2803-2346v.7 3910039-000228

substantial similarity] cannot be cured by amendment, the Court finds that leave to amend is not warranted.").[7]

Application of the extrinsic test directs courts to engage in an "analytical dissection" of the works at issue—that is to remove the elements that are *not* entitled to copyright protection before comparing the works for similarities. *Rice v. Fox Broadcasting Co.*, 330 F.3d 1170, 1174 (9th Cir. 2003) ("In applying the extrinsic test, we must distinguish between the protectable and unprotectable material because a party claiming infringement may place no reliance upon any similarity in expression resulting from unprotectable elements.") (internal quotation marks and citation omitted); *Erickson*, 839 F. Supp. 2d at 1136. Specifically, the unprotected elements that are to be set aside "include (1) ideas, as opposed to expression; (2) expressions that are indistinguishable from the underlying ideas; (3) standard or stock elements (*scènes à faire*); and (4) facts and other public information." *Erickson*, 839 F. Supp. 2d at 1136.

Most fundamentally, for the purposes of the case at hand, copyright does not protect *ideas*. 17 U.S.C. § 102. As applied to literary works, this means that general plot ideas and

---

[7] Unsurprisingly, bestselling authors are common targets for baseless copyright claims in which plaintiffs contend that their successful books were somehow derived from plaintiffs' works. In case after case, these claims are dismissed because no similarity exists beyond abstract ideas, facts or random words or phrases – much less the substantial similarity that the law requires. *See*, *e.g.*, *Acker v. King*, 46 F. Supp. 3d. 168, 175 (D. Conn. 2014) (dismissal of copyright action against Stephen King's novel *Doctor Sleep*); *Marquardt v. King*, No. 10 Civ. 3946 (JEC), 2011 WL 5042054 (N.D. Ga. Aug. 10, 2011) (dismissal of copyright action against Stephen King's novel *Duma King*); *Dunn v. Brown*, No. 10 Civ. 11383 (FDS), 2011 WL 4527449 (D. Mass. Sept. 26, 2011) (dismissal of copyright action against Dan Brown's novel, *Angels and Demons*, with an award of attorneys' fees to defendants); *Brown v. Perdue*, No. 04 Civ. 7417 (GBD), 2005 WL 1863673, at *9, 13 (S.D.N.Y. Aug. 4, 2005), *aff'd*, 177 F. App'x 121 (2d Cir. 2006) (dismissal of copyright action against author and publisher of *The Da Vinci Code*); *Allen v. Scholastic, Inc.*, 739 F. Supp. 2d 642 (S.D.N.Y. 2011) (dismissal of copyright claim against *Harry Potter and the Goblet of Fire* where plaintiff alleged that both works featured a young male protagonist, involved secret wizarding communities and wizard competitions); *Scott v. Meyer*, No. 09 Civ. 06076 (ODW), 2010 WL 2569286 (C.D. Cal. June 21, 2010) (dismissal of copyright claim against *Twilight* series arising out of plaintiff's vampire work, with an award of attorneys' fees).

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main • (503) 778-5299 fax

concepts are not protected.  *Berkic*, 761 F.2d at 1293.  As one court explained, if copyright

protection were broad enough to encompass the stock elements and general ideas that Plaintiff

alleges that Dr. Seuss took:

> [o]ne could as easily claim (if the authors had lived
> contemporaneously) that Hemingway's *Old Man and the Sea*
> violated the copyright of Melville's *Moby Dick* (aging seaman
> encounters large fish), Hardy's *Tess of the d'Urbervilles* violated
> the copyright of Tolstoy's *Anna Karenina* (woman succumbs to
> passion, suffers consequences), or Joyce's *Portrait of the Artist as
> a Young Man* violated the copyright of Dickens' *David
> Copperfield* (troubled childhood leads to writing career).

*Dunn v. Brown*, 517 F. Supp. 2d 541, 546 (D. Mass. 2007) (action involving two religious

thrillers and a corrupt Catholic Church).

Courts routinely reject copyright infringement claims based on the notion that they are

premised on unprotectable plot ideas—even where the plots are far more similar than the two

works here.  For example, in *Berkic*, the Ninth Circuit found a lack of substantial similarity

despite the fact that both works:

> deal with criminal organizations that murder healthy young people,
> then remove and sell their vital organs to wealthy people in need of
> organ transplants.  To some extent, both works take their general
> story from the adventures of a young professional who
> courageously investigates, and finally exposes, the criminal
> organization.  But this degree of similarity between the basic plots
> of two works cannot sustain a plaintiff's claim that the works are
> 'substantially similar.'

761 F.2d at 1293.  Similarly, in *Kouf*, where plaintiff contended a film depicting characters

shrunk to a fraction of normal size infringed on his screenplay with the same idea, the court

attached no significance to this similarity or the "fact that both works involve a life struggle of

kids fighting insurmountable dangers."  16 F.3d at 1045.  In *Benay v. Warner Bros. Entm't*, 607

F.3d 620, 625-26 (9th Cir. 2010), the Court found no substantial similarity despite a film and a

Page 12 - DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

screenplay "shar[ing] the same basic plot premise" of "an American war veteran [who] travels to Japan in the 1870s to train the Imperial Army in modern Western warfare in order to combat a samurai uprising."  In *Funky Films*, the court found no substantial similarity despite the works sharing "certain plot similarities:  the family-run funeral home, the father's death, and the return of the 'prodigal son,' who assists his brother in maintaining the family run business."  *Funky Films*, 462 F.3d at 1081.  The test for substantial similarity does not compare "the basic plot ideas for stories, but the actual concrete elements that make up the total sequence of events and the relationships between the major characters." *Berkic*, 761 F.2d at 1293.

Likewise, copyright does not protect "situations and incidents which flow naturally from a basic plot premise," often called "scenes a faire."  *Id.* at 1293.  "[E]xpressions that are standard, stock, or common to a particular subject matter or medium are not protectable [elements] under copyright law.  Such *scenes a faire* are . . . common in literary or dramatic works, in which certain themes or character types flow directly from common plot ideas."  *Erickson*, 839 F. Supp. 2d at 1137 (internal citations and quotation marks omitted)).  For example, in *Benay*, where the basic plot line of both works was an American travelling to Japan to train the Japanese military, scenes of "the protagonist sailing into Japan, scenes in the Imperial Palace, scenes on the Imperial Army's training grounds, and battle scenes in various places in Japan" all flowed naturally from "the works' shared unprotected premise" and were therefore irrelevant to a comparison of the works at issue.  607 F.3d at 628.  Similarly, in *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 50 (2d Cir. 1986) (cited with approval in *Olson v. Nat'l Broad. Co., Inc.*, 855 F.2d 1446, 1451 (9th Cir. 1988)), elements such as "drunks, prostitutes, vermin and derelict cars" were found to be unprotected *scenes a faire* because they "would appear in any realistic work

Page 13 - DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

about the work of policemen in the South Bronx." Courts routinely find that various plot elements, scenes, and other forms of expression naturally flow from a basic plot idea and thus cannot form the basis of copyright claim.[8]

Finally, "[f]or one work to be *substantially* similar to another, more than incidental and occasional similarities are required." *Erickson*, 839 F. Supp. 2d at 1139 (emphasis in original); *Litchfield*, 736 F.2d at 1356 ("random similarities scattered throughout the works" are insufficient to state a claim for infringement); *Kouf*, 16 F.3d at 1045-46 ("[W]e are equally unimpressed by Kouf's compilation of random similarities scattered throughout the works[,] such as a lawnmower scene, a sprinkler scene, the presence of an attic, danger scenes, concerned parents, and kids sleeping outside overnight." (internal quotation marks and citations omitted)).

### B.    There is no infringement of protectable expression

Plaintiff recites the following seventeen scattered alleged similarities. Compl. ¶¶ 49-65.

| I | "The most notable thing, that in the Plaintiff's work there are characters emulating Lukus Loo, by wearing flowers on their head in his honor; that element was plagiarized by the Defendants." |
|---|---|
| II | "The next is that in both stories the main characters are throwing their money on the ground, that element was clearly plagiarized by the Defendants." |
| III | "The next is that in both stories the main characters are reading books in the beginning, that element was clearly plagiarized by the Defendants." |

---

[8] *See e.g. Olson v. Nat'l Broad. Co.*, 855 F.2d 1446, 1451 (9th Cir. 1988) (similarities in theme, mood, and pace are "common to the genre of action-adventure television series and movies and therefore do not demonstrate substantial similarity."); *Erickson*, 839 F. Supp. 2d at 1137-38 ("generic characters of the 'cocky kid' and 'older mentor' derive from basic plot idea of a young mentee-older mentor storyline and are therefore not protectable elements of a copyrighted work" (citing *Campbell v. Walt Disney Co.*, 718 F. Supp. 2d 1108, 1115 (N.D. Cal. 2010)); *Wild* 513 Fed. App'x at 641 ("depictions of a character approaching a carnival, characters in the house of mirrors, and a view through a gun sight . . . are simply unprotectable 'stock scenes' or 'scenes a faire'" flowing from a work about a carnival); *Berkic*, 761 F.2d at 1293 ("situations and incidents which flow naturally from a basic plot premise" are unprotected "scenes a faire"); *FLTI*, 2013 WL 5781276 at *8 (placement of giving one's self to God for Christmas as "the last event in each work is unprotectable because it flows from the story [of the Nativity] itself").

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

| IV | "The next is that in both stories the main characters are singled out and taunted by classmates, that element was clearly plagiarized by the Defendants." |
| V | "The next is that in both stories the main characters have an animal friend that appears in text and illustrations, which does not speak, and that element was also clearly plagiarized by the Defendants." |
| VI | "The next is that in both stories the main characters in the beginning are not famous, nor do they have flowers on their heads, that element was also plagiarized by the Defendants." |
| VII | "The next is that in both stories the main characters have celebrations in their honor." |
| VIII | "The next element that was plagiarized is that both main characters gain fame and wealth and are the center of attention, in which they despise." |
| IX | "The next plagiarized element is that both main characters go the wisest man in town for advice, after being bullied by their peers." |
| X | "In both stories they have a florist." |
| XI | "The next is that in both stories the main characters accept the flower near the end and are enlightened." |
| XII | "The next is that both characters at one point care more about fame and wealth than love, and thus feel empty inside." |
| XIII | "The next similarity is that both main characters feel the need to leave town and seek the outdoors, alone in search for peace of mind." |
| XIV | "In both stories the minor characters are often standing oddly close together." |
| XV | "In both stories the flowers are seven peddled. [sic]" |
| XVI | "Both stories have books stacked on each other." |
| XVII | "Is the fact that the plaintiff wrote, 'And these are the words that he read' near the end of his story, before the final poem. And in the 1995 'alleged' posthumous Dr. Seuss book published four years after Seuss's death, it reads, near the end of the story, before the final poem" And these are the words that poor Mayzie said", which just happens to have been taken out of the New 2016 version, which the defendants now claim to be the 'actual original,' which is created in 2016 according to the Copyright Office (Exhibit 42)." |

This scattershot listing of alleged similarities focuses heavily on unprotectable ideas,

stock characters and *scenes a faire*, and completely fails to establish substantial similarity of plot,

themes, dialogue, mood, setting, pace, characters and sequence of events.  To boot, some of these

so-called similarities do not actually exist.

Page 15 - DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

4820-2803-2346v.7 3910039-000228

### 1. Plaintiff cannot claim protection in basic plot ideas or *scenes a faire*

Most of Plaintiff's alleged similarities flow from the fact that both books embrace (in very different ways) the idea that money or fame does not necessarily buy happiness. This theme, however, has inspired innumerable stories in Western Literature ranging from the *King Midas* legend to *The Hobbit*. Just as Plaintiff cannot use copyright law to monopolize this theme, he also cannot corner the market on *scenes a faire* that naturally *flow* from this basic idea, such as Element VII (the main characters have celebrations in their honor when they become famous); Element VIII (both main characters gain fame and wealth and are at the center of attention which they despise); Element XII (both characters care more about fame and wealth than love and feel empty inside); Element II (main characters throw money on the ground);[9] or Element XIII (after recognizing the emptiness of money and fame, both characters feel the need to leave town and seek the outdoors, alone in search for peace of mind). These are precisely the types of plot elements that flow directly from a story powered by the idea that money and fame do not buy happiness. *Cf. Benay* 607 F.3d at 628 (observing it is "not surprising" that works sharing a general plot involve similar scenes). What is fatal to Plaintiff's claim is the fact that in the *actual expression* of these basic plotlines and the characters involved, the two stories are radically different, as detailed further below.

Similarly, Plaintiff cannot claim a copyright interest in the basic plot idea of a flower growing out of someone's head. *Cf. Kerr v. New Yorker Magazine*, 63 F. Supp. 2d 320, 325 (S.D.N.Y. 1999) ("There can be no dispute that defendants cannot be held liable for using the

---

[9] Contrary to the Complaint, there is no scene or illustration in which Lukus Loo throws his money on the ground. Element II. He throws his crown on the ground and what looks like a necklace, but not money. *See* Compl. p. 114.

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

idea of the New York City skyline on someone's head."). Plaintiff's complaint concedes as much. In paragraphs 121-22, Plaintiff admits that the cover of Mad Magazine in 1969 featured a picture of Alfred E. Neuman "sprouting flowers out of his head," *see* Compl. p. 243, and that in 1976, Dr. Seuss published "Cat's Quizzer" featuring an image of a girl with a daisy on her head (Compl. p. 242) —both of which substantially pre-date Plaintiff's 1991 story. Indeed, Plaintiff directly admits that the idea of "the flower sprouting from the head" is not "original[]." Compl. ¶ 122.

Given this concession, Plaintiff likewise cannot claim a copyright interest in the component aspects of this basic plot idea or in *scenes a faire* that flow naturally from this idea, such as Element I (other characters wear flowers to emulate the protagonist); Element VI (main characters at beginning do not have flowers and are not famous); Element X (there is supposedly a character who is a florist); Element XV (the flowers have seven petals); Element IV (main characters are both singled out and taunted by classmates); and Element XI (toward the end, both characters learn to accept the flower growing out of their head).

What is determinative here and what prevents Plaintiff from establishing substantial similarity is the fact that in the *actual expression* of the "flower-on-the-head" concept, the two stories are extremely dissimilar. In *Daisy-Head Mayzie*, it is the central plot device of the story – as is evident from the book's title. At the very beginning of the story, a daisy sprouts out of Mayzie's head—leading to a commotion in school, her national fame, and her epiphany about money and fame facilitated by her "They love me/They love me not" game with the daisy's petals. Thematically, the daisy serves as a sign of Mayzie's difference from the others.

Page 17 - DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

In Plaintiff's story, the "flower-on-the-head" crops up only near the end of the story and serves as a symbol of Lukus Loo's re-birth as a result of his reconnection with nature. In his role as king, he has been unduly focused on ruling the kingdom and greed, and has become "dead inside." When he storms out of his kingdom and walks into nature, some sort of flowers (although not necessarily a daisy) grow on his head, and he "hear[s] the birds sing, rejoicing [in] his new rebirth." Compl. p. 116. All of this fits into Plaintiff's main theme about "enjoy[ing] nature's sweet art." *Id.* at 126. This use of the flower as a symbol of being at one with nature is totally absent from Seuss's simple work.

## 2.    Plaintiff's work is not substantially similar to *Daisy-Head Mayzie*

An objective analysis of the specific elements required by the extrinsic test—stripped of unprotectable elements—reveals how strikingly dissimilar the two works are.

### a.    The Plots Are Not Similar

As demonstrated by the plot summaries in the "Factual Background" section above, the plots here are starkly different. In brief summary, *The Pains of Being Pure at Heart* is an anguished tale that follows its protagonist, Lukus Loo, throughout his entire life. Lukus Loo is extremely bright but is taunted for missing the top of his head, and is deeply saddened by his classmates' failure to recognize his brilliance. Showing significant agency, Lukus Loo fills the hole in his head with dirt and performs brilliantly in college—so brilliantly that he becomes king. But in focusing on his brilliance, power and greed, he forgets "how to play" and loses his connection to nature. Finally his sadness at these losses overwhelm him, and he runs out into nature, where flowers grow on his head as a sign of reconnecting to nature. He then tragically dies while attempting to save his dog (which during his hubris he had forgotten).

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

In stark contrast, Daisy-Head Mayzie is a playful morality tale of an innocent elementary school girl without much agency in her life – even the titular daisy sprouts on her head for no reason at all.  Mislead by slick and selfish adults, Mayzie naively picks fame and fortune until she realizes those pursuits are empty when compared to the love of friends and family.  The story has a happy ending when Mayzie returns to her family, friends, and elementary school, and the daisy largely disappears.

None of Plaintiff's alleged plot similarities demonstrate similarity beyond the "vague, abstracted idea of a general plot."  *Berkic*, 761 F.2d at 1293.  For example, Plaintiff alleges in Element XIII that both characters feel the need to leave town and seek the outdoors, alone in search for peace of mind.  Yet, Mayzie runs outside just to get away from others and because she has nowhere else to go: "nowhere to stay/Because she was sure that everyone must/ Have written her off in total disgust."  There is nothing special for her about the outdoors except that it is empty of people.  Cunningham Dec. Ex 1 at 45.  In contrast, Lukus Loo seeks refuge in the outdoors in order to commune with *nature* because he finds it rejuvenating.  *See, e.g.*, Compl. p. 118. ("Lukus Loo walked for three days, / under the heat of the Sun. / He crossed rivers, streams and fields of green grass/He felt great.").  *See also* Compl. pp. 92, 100, 102, 112-26.

As another alleged plot similarity, Plaintiff alleges in Element I that the Defendants plagiarized his work by employing "characters emulating Lukus Loo, by wearing flowers on their head in his honor."  Not only is this an unprotectable basic plot idea, in Plaintiff's work, characters wear flowers on their head once per year in mourning of Lukus Loo's death, as a form of respectful tribute.  Compl. p. 124 ("Once a year in people's homes, / they stayed inside and did not play. / They wore flowers on their heads as their belief.")  In contrast, the characters in

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

4820-2803-2346v.7 3910039-000228

*Daisy-Head Mayzie* only wear daisies as part of a frivolous and passing commercial fad, and the daisy-head fad is not limited to characters *wearing* daisies—it covers inanimate objects as well. ("Daisy-Head fever was gripping the nation.  / It had quickly become a worldwide sensation!  / Daisy-Head burgers, / And Daisy-Head drinks. / Daisy-Head stockings, / And Daisy-Head sinks. / Daisy-Head buttons, / And Daisy-Head bows. / Mayzie was famous, / The star of her shows."). Cunningham Dec. Ex. 1 pp. 41-42.

Plaintiff's other allegations of plot similarity fare no better.  Plaintiff alleges that "the main characters accept the flower near the end and are enlightened" (Element XI), but, in Plaintiff's story, the flower only *appears* towards the end of the book, and it appears as a symbol of Lukus Loo's return to nature.  The flower was never something that Lukus Loo had to overcome or accept.  And in *Daisy-Head Mayzie*, the flower largely *disappeared* when Mayzie leaves behind her fame.  Finally, some of Plaintiff's alleged plot similarities do not have any connection to the First Version of Daisy-Head Mayzie at all.[10]

### b.    The Characters Are Not Similar

As with the plot, the characters are starkly different.  The two main characters have almost nothing in common.  Lukus Loo is an anguished, complex male protagonist.  He is depicted from boyhood to death and goes through many emotional journeys.  He is exceptionally smart and scholarly, and enjoys communing with nature and animals.  Lukus Loo often suffers greatly and is deeply hurt by the world around him.  *See, e.g.*, Compl. p. 102 (he "sulked in self-

---

[10] For example, Plaintiff alleges that "the main characters have celebrations in their honor" (Element VII), but the Complaint presents an image (presumably from the TV show) that does not appear in the First Version of *Daisy-Head Mayzie*.  *Compare* Compl. ¶ 55, *with* Cunningham Decl. Ex. 1 pp. 1-54.  In any event, Lukus Loo's celebration was to celebrate the adult Lukus Loo becoming king, something that never happened to young Mayzie.

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main • (503) 778-5299 fax

pity"). He is also very determined; he "had a plan" and "his inside fire would burn." *Id.* at 102, 106. Eventually, Lukus Loo becomes out of touch with his former self and goes through a phase of hating even Spring. *Id.* at 110. But after realizing he felt dead inside, he falls back in love with Nature. In the end, he exhibits great "brave[ry]." *Id.* at 120.

Daisy-Head Mayzie shares none of these central character traits. She is an innocent, naïve young girl with caring parents. She eventually figures out that the love of family and friends means more than fame and fortune. Thus, other than for the unprotectable idea of a flower on their head, the protagonists are completely different in their personality, temperament, age, gender and links to family.

The secondary characters also have nothing in common. In Plaintiff's story, Plutus Plutarch plays a major role. He is an older friend of Lukus Loo's and a philosopher—as evidenced by his name, which presumably references Plutarch, the great ancient philosopher known for books on great moral heroes. Plutus Plutarch serves as a source of genuine wisdom and guides Lukus Loo throughout each of the book's major events—comforting Lukus Loo when he is sad, *id.* at 102, showing distress when Lukus Loo struggles, *id.* at 112, and delivering Lukus Loo's final, posthumous words, *id.* at 124. Plutus Plutarch has deep understanding of "the course that pain takes in a world full of fakes." *Id*. at 122. In the end, he is the only one to genuinely mourn Lukus Loo and presents Lukus Loo's final poem to the reader.

There is no character remotely like Plutus Plutarch in *Daisy-Head Mayzie*. Rather, Dr. Seuss's book features many secondary characters with no parallel in Plaintiff's work including:

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

- Mayzie's parents:  Mayzie's devoted parents (a shoe salesman and a welder) who come rushing to help when called by the principal, and try to warn her not to sign the contract.

- A long list of adults who make cameo appearances in the story, including Ms. Sneetcher (the teacher), the principal, the florist, the doctor, the doctor's patient, the police officer, and the mayor.  Most of these characters are mocked by Dr. Seuss as ineffectual or self-important.

- The aptly-named Finagle the Agent, the book's antagonist, a "slick" "wheeler and dealer" who urges Mayzie to "stick with me" kid in pursuit of his own best interests, and dupes Mayzie into pursing fame only to line Finagle's own pockets. Cunningham Dec. Ex. 1 pp. 39-40.  Plaintiff's work lacks a clear antagonist at all—while unidentified school children and townspeople tease Lukus Loo, no individual character takes advantage of him for their own gain.

- The Cat in the Hat, the narrator and facilitator of Mayzie's journey back to her family, friends, and school.

Plaintiff tries to force a parallel between the principal and Plutus Plutarch, claiming in Element IX that "both main characters go to the wisest man in town for advice."  But Mayzie does not "go to" the principal, she is physically carried there by Ms. Sneetcher.  Cunningham Dec. Ex. 1 at 13.  In any event, the principal is an authority figure, and while he is book-smart, he states only obvious, useless information that does not actually help Mayzie, whereas Plutus Plutarch is a friend who provides Lukus Loo with wise guidance throughout the story.

Similarly, Plaintiff's claim that there are character similarities because both works contain an "animal friend who does not speak" (Element V) is absurd.  Lukus Loo's dog is a pet who is absent for large stretches of the book, and dies at the end.  In *Daisy-Head Mayzie*, the

Page 22 - DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

4820-2803-2346v.7 3910039-000228

character referenced is presumably the Cat in the Hat—a famous character who, in fact, *does speak* and provides the introduction to the book.  Cunningham Decl. Ex. 1 at 7.  After that, he is present in the background watching Mayzie and eventually carries Mayzie back home.  *Id.* at 44-50.

Nor is there any similarity between the alleged "florist" in each work.  Element X.  Not only is a florist an unprotectable stock character in a book about someone who has flowers sprout from their head, there *is no florist* in Plaintiff's work.  The illustration cited in paragraph 58 of Plaintiff's complaint is Plutus Plutarch the philosopher.  *See* Compl. p. 103.[11]

### c.    The Themes Are Different

Daisy-Head Mayzie's theme is simple, as appropriate for a children's book:  Money and fame do not bring happiness; rather the love of family and friends brings happiness.

In *The Pains of Being Pure at Heart*, although part of the theme is that fame does not buy happiness, it is not the love of friends and family that the protagonist craves.  In fact, Lukus Loo's family is entirely absent from the story, and he only has one human friend.  Instead, the central theme is that it is critical to stay connected to nature, to keep intact the ability to play, and to be determined and strong in these pursuits despite society's views of you.  Compl. p. 104 ("But Lukus Loo forgot to play."); *id.* at 114 ("Lukus Loo started to play/ He cared not what they said/He remembered how he used to be/and gave up all his vanity.").  The themes of nature's virtues and the need to be determined in the face of societal disapproval are brought into

---

[11] Finally, in one of strangest allegations, Plaintiff alleges that in both stories the minor characters are often standing oddly close together.  Element XIV.  Like the allegation in paragraph 55, the relevant image in the Complaint is not from the *Daisy-Head Mayzie* book at all.  Even if it were, the fact that illustrators often need to squeeze multiple characters close together so that they fit onto the page is not a ground for a copyright suit or sufficient to establish substantial similarity.

Page 23 - DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

particular focus in the whole last section of Plaintiff's story including Lukus Loo's poem at the end: "Keep on your path, even when cold/soon knowledge and peace will unfold/look and you will enjoy nature's sweet art." *Id.* at 126.

### d.    The Dialogue Is Different

The works' use of dialogue is extremely dissimilar. *The Pains of Being Pure at Heart* uses very little dialogue. The story is instead told through an omniscient narrator. The limited dialogue that exists is stilted and aims to be profound, as when Plutus Plutarch tells Lukus Loo "Not to worry, it always gets better / just don't end up a regretter," Compl. p. 98, and when Lukus Loo gives Plutus Plutarch his poem and says "Read it and weep." *Id.* at 104; *see also id.* at 118 (Lukus Loo looks at rivers, streams and fields of grass and says "Everything is as one."). Plaintiff's work uses advanced vocabulary words like "disarranged," "strife," "decree," and "vanity," and frequently appears to utilize an unconventional A, B, C, C, A, B, D, D rhyming scheme. In contrast, *Daisy-Head Mayzie* features a lot of dialogue. The story is told in significant part by the goofy things people say about Mayzie and her daisy. The book uses simple vocabulary aimed at young children, and the story is told using rhyming couplets.

The only specific language similarity alleged by Plaintiff is that his work, when introducing the poem Plutus Plutarch found after Lukus Loo's death, states "And these are the words that he read," and that *Daisy-Head Mayzie* includes the words "And these are the words that poor Mayzie said." Element XVII. But this phrase is exceedingly common and is used in a completely different context, and with different meaning. In *Daisy-Head Mayzie*: "Mayzie McGrew ran night and day, / Nowhere to go, nowhere to stay. / Because she was sure that everyone must / have written her off in total disgust, / Over and over again in her head, / These are the words that poor Mayzie said: / 'I can never go home. Nobody loves me. / Nobody loves

Page 24 - DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

me.  Nobody loves me.'"  Cunningham Dec. Ex. 1 at 45.  In short, the phrase introduces Mayzie's unsubstantiated fear repeating in her head—which the daisy soon dispels prior to Mayzie's return home.  In Plaintiff's work, "Plutus Plutarch found some poems / that Lukus Loo wrote one day. / Plutus Plutarch was sad as tears fell from his head. / And these are the words that he read," provides the introduction to Lukus Loo's closing poem.  Compl. p. 124.  In Plaintiff's work, the phrase "and these were the words" introduces the work's overriding theme, not something incorrect to be overcome.  Moreover, Plaintiff exaggerates the similarity of the words in the work by alleging both appear "before the final poem," when there is no "final poem" in *Daisy-Head Mayzie*.

In any event, the phrase "and these were the words that" preceding a description of the words a person said or read is exceedingly common and not protectable.  An internet search shows usage ranging from the Bible: "These are the words that the LORD spoke to Jeremiah . . ." in Jeremiah 30, to Kool & The Gang's 1982 song "Hi De Hi, Hi De Ho": "So sweet and so gentle as she could be / These are the words that she said to me."[12]  Plaintiff must demonstrate much more than that both works use a common turn of phrase to show substantial similarity.  *Narell v. Freeman*, 872 F.2d 907, 911-12 (9th Cir. 1989) (noting that the use of commonly-used phrases is not protected, and stating that paraphrasing "mosquitos feasted on his flesh" versus "mosquitos ravished his flesh" would not constitute infringement).

---

[12] *See* The Holy Bible, New Century Version®, Copyright © 2005 by Thomas Nelson, Inc., available at: https://www.biblegateway.com/passage/?search=Jeremiah+30&version=NCV;  "Hi de hi, hi de ho," Ronald Bell, James Taylor, and Kool & the Gang, © 1982, *available at:* https://www.youtube.com/watch?v=CQtgQKaUzss.

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

### e.    The Mood Is Different

Plaintiff does not allege the mood of the works is substantially similar, and for good reason. *The Pains of Being Pure at Heart* is a sorrowful tale. Lukus Loo suffers a great deal of anguish throughout the work, and dies tragically after feeling brief joy in nature. The title itself emphasizes that those "pure of heart" suffer—which is borne out in the work itself. At his funeral, his only human friend knew "the course that pain takes / in a world full of fakes." *Id.* at 122. Even the closing poem, which is read by Plutus Plutarch "as sad tears fell from his head," emphasizes that "It is very hard to make a good friend." *Id.* at 126. The language in Plaintiff's work reinforces its somber mood. Plaintiff's work is replete with gloomy words like "misery," "hurt," "doom," "disarranged," "dim," "sulked," "strife," "greed," "hate[]," "pain," and "distress[]."

In stark contrast, *Daisy-Head Mayzie* is a silly, light, and somewhat zany morality tale. It is simple and fun-loving, and avoids any serious subjects. The only remotely serious scene— Mayzie's fear that nobody loves her—is quickly resolved by playing a childhood game with the daisy growing out of her head. Mayzie, upon relinquishing her fame, returns from her brief stint in the limelight to her very same elementary school classroom, and goes on to live happily ever after. Cunningham Dec. Ex. 1 at 50. ("That's how it all happened. The thing went away / And Mayzie McGrew is quite happy today, / Back at her studies, and doing just great / In all of her subjects in Room Number 8.").

### f.    The Setting Is Different

*The Pains of Being Pure at Heart* is set "years ago, in a town called Value Ville." Compl. p. 90. Although some early scenes occur at Lukus Loo's school, the book moves quickly to other settings, including Plutus Plutarch's house, Lukus Loo's unidentified college, and

Page 26 - DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main ⋅ (503) 778-5299 fax

4820-2803-2346v.7 3910039-000228

eventually, Lukus Loo's throne. *Daisy-Head Mayzie*, on the other hand, is set in modern times and occurs largely in Mayzie's elementary school, with one adventure outside to flee some bees, or on a tree where Mayzie sits to contemplate her predicament.

Plaintiff's only claims regarding the settings are that "in both stories the main characters are reading books in the beginning" (Element III), and that "[b]oth stories have books stacked on each other" (Element XVI). These are common *scenes a faire* for stories taking place in a school, and do not constitute protected expression. *See Benay*, 607 F.3d at 628 (disregarding scenes in Japan which flowed naturally from the unprotected premise of an American general in Japan).

### g.    The Pace and Sequence of Events Are Different

The pace and sequence of the two works are distinctly dissimilar. *Daisy-Head Mayzie* is framed by an opening introduction from a narrator—the Cat in the Hat—who makes the ensuing story seem a bit fantastic. Cunningham Dec. Ex. 1 at 7 ("It's hard to believe such a thing could be true."). The daisy appears on Mayzie's head almost immediately—it is the catalyst for the entire story—and the next several scenes are spent making fun of silly, ineffective adults. After a short taste of stardom, Mayzie returns to her classroom and continues on with her life. The simple, happy ending is presented quite quickly.

*The Pains of Being Pure at Heart* covers Lukus Loo's entire life. In contrast to Mayzie, the flowers do not appear on Lukus Loo's head until he has become an adult king—in fact they appear just days before his demise. The story ends with Lukus Loo's death and a closing poem written by the dead protagonist announcing the story's moral.

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

### 3. Plaintiff's complaint offers nothing more than random, scattered similarities unprotected by copyright

In sum, stripped of similarities between "the vague, abstracted idea of a general plot,"

*Berkic*, 761 F.2d at 1293, *Daisy-Head Mayzie* and *The Pains of Being Pure at Heart* are not

substantially similar in their plot, themes, dialogue, mood, setting, pace, characters, and sequence

of events.  The type of incidental, scattered, random similarities which Plaintiff cuts and pastes

from each work in order to manufacture alleged substantial similarity cannot, as a matter of law,

state a claim for copyright infringement.  *Erickson*, 839 F. Supp. 2d at 1139 ("For one work to be

*substantially* similar to another, more than incidental and occasional similarities are required."

(emphasis in original)); *Kouf*, 16 F.3d at 1045-46.  Plaintiff's Complaint fails to state a claim for

copyright infringement.

### CONCLUSION

Random House respectfully requests that Plaintiff's Complaint be dismissed with

prejudice, and that it recover its attorney's fees and costs under 17 U.S.C. § 505.

DATED this 11th day of January, 2018.

**DAVIS WRIGHT TREMAINE LLP**

By  s/ Tim Cunningham
Tim Cunningham, OSB #100906
timcunningham@dwt.com
Telephone:  (503) 241-2300
Facsimile:  (503) 778-5299

**DAVIS WRIGHT TREMAINE LLP**
LINDA STEINMAN, *Pro Hac Vice*
lindasteinman@dwt.com
1251 Avenue of the Americas, 21st Floor
New York, New York 10020-1104
Telephone:  (206) 603-6409
Facsimile:  (206) 489-8340

Attorneys for Defendant Penguin Random House

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that I served a copy of the foregoing **DEFENDANT PENGUIN RANDOM HOUSE'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT** on the non-ECF participant listed below:

> Charles Augustus Steen III
> 1721 NE 14th St.
> Portland, OR  97212
> Telephone (971) 227-6932
>
> Plaintiff *Pro Se*

by mailing a copy thereof in a sealed, first-class postage prepaid envelope, addressed to said individual's last-known address and deposited in the U.S. mail at Portland, Oregon and to:

> Anthony Todaro
> DLA Piper LLP
> 701 5th Ave., Ste. 7000
> Seattle, WA  98104
> Telephone (206) 839-4830
> Facsimile (206) 494-1802
>
> Attorneys for Defendant Dr. Seuss Enterprises L.P.

in accordance with the Court's CM/ECF system.

Dated this 11th day of January, 2018.


DAVIS WRIGHT TREMAINE LLP


By  s/ Tim Cunningham
       Tim Cunningham, OSB #100906

Of Attorneys for Defendant Penguin Random House

4820-2803-2346v.7 3910039-000228

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main ⋅ (503) 778-5299 fax