IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CHARLES AUGUSTUS STEEN III,

Plaintiff,

v.

DR. SEUSS ENTERPRISES L.P. and PENGUIN RANDOM HOUSE,

Defendants.

Case No. 3:17-cv-01765-SB

**FINDINGS AND RECOMMENDATION**

**BECKERMAN, Magistrate Judge.**

Charles Augustus Steen III ("Plaintiff"), a self-represented litigant, brings this action against Dr. Seuss Enterprises L.P. ("DSE") and Penguin Random House ("PRH") (collectively, "Defendants"). Plaintiff alleges that Defendants infringed his intellectual property rights in a work entitled "The Pains of Being Pure at Heart" ("Pure at Heart"), and in doing so, violated the Copyright Act, 17 U.S.C. §§ 101-1332. Defendants move to dismiss Plaintiff's complaint for failure to state a claim. *See* FED. R. CIV. P. 12(b)(6). The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331. For the reasons that follow, the Court recommends that the district judge grant Defendants' motions to dismiss.

## BACKGROUND

Plaintiff is the author of Pure at Heart, a children's book registered with the Copyright Office on June 21, 1991. (Compl. ¶ 23.) In December 1994, PRH published "Daisy-Head Mayzie" and registered the work with the Copyright Office. (*Id.* ¶ 75.) After purchasing a copy of Daisy-Head Mayzie, Plaintiff noticed many similarities between the two books. (*Id.* ¶ 79.)

### I. Description of Plaintiff's Work

Plaintiff's book is about Lukus Loo, a boy who is missing the top of his head. (*Id.* Ex. 1, at 90, 92.) Despite Lukus Loo's passion for reading books and writing poems, the students in his class tease him, leaving him in tears. (*Id.* at 94.) After receiving advice from a local philosopher, Lukus Loo leaves town to go to college. (*Id.* at 102, 106.) The townspeople became impressed with Lukus' knowledge and they appoint him to be king. (*Id.* at 108.) Because of his new position, Lukus loses interest in his dog, nature, and the townspeople. (*Id.* at 110.) One day, Lukus realizes what he has lost, wakes up with a flower on his head, gives up his crown, and embraces nature. (*Id.* at 112, 114, 116.) On his journey, he observes the dog he had previously dismissed drowning in a body of water. (*Id.* at 118.) Lukus Loo tries to save his dog, but he drowns instead. (*Id.* at 120.) The story closes with Lukus Loo's funeral, and one of his poems. (*Id.* at 126.)

### II. Description of Defendants' Work

Daisy-Head Mayzie tells the story of Mayzie McGrew, a young girl. (Cunningham Decl. Ex. 1, at 2.)[1] One day, while sitting in class, Mayzie found a daisy growing from her head. (*Id.* at

[1] In ruling on a motion to dismiss, courts "may . . . consider materials that are attached to the complaint and materials on which the plaintiff's case necessarily relies where the authenticity of those materials is not disputed." *Erickson v. Blake*, 839 F. Supp. 2d 1132, 1135 (D. Or. 2012) (citing to *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001)). Accordingly, the Court may consider the version of Daisy-Head Mayzie submitted by Defendants.

8-9.) Mayzie's classmates notice the daisy but her teacher, Miss Sneetcher, does not believe that it was growing out of Mayzie's head. (*Id.* at 10-11.) Miss Sneetcher takes Mayzie to the principal's office. (*Id.* at 13, 17.) It appeared that the daisy was dying, but then Mayzie started to wilt away as well. (*Id.* at 19-20.) The school called Mayzie's parents, a doctor, and a florist, and then placed Mayzie in a room that was soon overrun by bees attracted to the daisy's scent. (*Id.* at 26.) After escaping the bees, Mayzie runs back to school where she encounters the principal, the florist, the doctor, her parents, and eventually the mayor, all trying to address the daisy on her head. (*Id.* at 34-36.) Amidst the efforts to fix Mayzie, a talent agent named Finagle appears and persuades Mayzie to sign a talent contract. (*Id.* at 39.) True to his word, Finagle brings Mayzie fame and riches. (*Id.* at 42-43.) No amount of money in the world, however, could replace her loved ones. (*Id.* at 44.) Mayzie runs away, believing that nobody loves her anymore. (*Id.* at 45.) To figure out how people truly feel about her, Mayzie pulls the petals off the daisy on her head, alternating "They love her . . . They love her NOT!" (*Id.* at 47.) The daisy reveals that her friends and family do love her after all. (*Id.* at 48.) Mayzie's story concludes with her happily back in class, learning to live with the daisy on her head. (*Id.* at 50-51.)

**III. Procedural History**

Plaintiff filed a complaint against Defendants on November 3, 2017, alleging that Defendants copied the following elements from Pure at Heart:

(1) characters who wear flowerpots on their heads to emulate the protagonists;

(2) the protagonist throws money on the ground when in distress;

(3) the protagonist reads a book in the beginning of the story;

(4) classmates single out and taunt the protagonist;

(5) an animal friend that appears in text and illustrations but does not speak;

(6) the protagonist is not famous in the beginning and does not have flowers on his head;

(7) a celebration held in the protagonist's honor;

(8) the protagonist gains fame and wealth, which he later regrets;

(9) the protagonist seeks out the advice of the wisest man in town, after being bullied by his peers;

(10) a florist;

(11) the protagonist gains enlightenment once he accepts the flower near the end of the story;

(12) the protagonist feels empty inside because he cares more about fame and wealth than love;

(13) the protagonist leaves town and goes to the outdoors to secure peace of mind;

(14) characters standing oddly close together;

(15) flowers with seven petals;

(16) books stacked on top of each other;

(17) the phrase "[a]nd these are the words that . . ." appearing near the end of the book;

(18) the protagonist crying when leaving town to seek the outdoors; and

(19) the protagonist in the two works have similar sounding names.

(Compl. at 31-39 and Pl.'s Resp. at 20.)

On January 11, 2018, Defendants filed separate motions to dismiss the complaint, arguing that, as a matter of law, the parties' respective works are not substantially similar.

## ANALYSIS

### I. STANDARD OF REVIEW

The Ninth Circuit has "held that dismissal for failure to state a claim is 'proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory.'" *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041

(9th Cir. 2010) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). In evaluating the sufficiency of a complaint's factual allegations, district courts are to "accept as true all well-pleaded allegations of material fact, and construe them in the light most favorable to the non-moving party." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (citation omitted). "A document filed *pro se* is to be 'liberally construed,' and a '*pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Woods v. Carey*, 525 F. 3d 886, 889-90 (9th Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 127 (2007)).

## II. DISCUSSION

### A. Copyright Infringement

To establish copyright infringement, Plaintiff "must demonstrate '(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" *Funky Films, Inc. v. Time Warner Entm't Co.*, 462 F.3d 1072, 1076 (9th Cir. 2006) (quoting *Feist Pubs., Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). Defendants do not dispute that Plaintiff owns a valid copyright.

As the Ninth Circuit recently clarified, "the second element has two distinct components: copying and unlawful appropriation." *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1117 (9th Cir. 2018) (quotation marks omitted). Plaintiff can establish copying "by showing that the defendant had access to the plaintiff's work and that the two works share similarities probative of copying." *Rentmeester*, 883 F.3d at 1117 (citing *Baxter v. MCA, Inc.*, 812 F.2d 421, 423 (9th Cir. 1987)). "To prove copying, the similarities between the two works need not be extensive, and they need not involve protected elements of the plaintiff's work." *Id.* "To prove unlawful appropriation, on the other hand, the similarities between the two works must be 'substantial' and they must involve protected elements of the plaintiff's work." *Id.* For purposes of this motion, Defendants

do not challenge whether Defendants had access to Plaintiff's work. (PRH's Mot. 9.) Therefore, the question before the court is whether the complaint states a plausible claim that the copyrighted work and the allegedly infringing work are substantially similar.

"The Ninth Circuit employs a two-part test for determining whether one work is substantially similar to another." *Shaw v. Lindheim*, 919 F.2d 1353, 1356 (9th Cir. 1990). To prevail, Plaintiff must "prove[] *both* substantial similarity . . . under the 'extrinsic test' and substantial similarity . . . under the 'intrinsic test.'" *Id.* (emphasis in original). "The 'extrinsic test' is an objective comparison of specific expressive elements." *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002). "The 'intrinsic test' is a subjective comparison that focuses on 'whether the ordinary, reasonable audience' would find the works substantially similar in the 'total concept and feel of the works.'" *Cavalier*, 297 F.3d at 822 (quoting *Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1045 (9th Cir. 1994)). While the intrinsic test is typically a question reserved for the jury, the Court may decide whether there is sufficient objective similarity under the extrinsic test, as a matter of law, on a motion to dismiss. *See Christianson v. West Publ'g. Co.*, 149 F.2d 202, 203 (9th Cir. 1945) ("There is ample authority for holding that when the copyrighted work and the alleged infringement are both before the court, capable of examination and comparison, non-infringement can be determined on a motion to dismiss."); *see also Erickson*, 839 F. Supp. 2d at 1135-40 (granting motion to dismiss copyright claim and citing several district court cases in which non-infringement was decided on a motion to dismiss).

In applying the extrinsic test, "a court must filter out and disregard the non-protect[a]ble elements[.]" *Cavalier*, 297 F.3d at 822. For example, copyright protects the creative expression of an idea, not the idea itself. *See* 17 U.S.C. § 102(b) ("In no case does copyright protection for

an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery[.]"). "Familiar stock scenes and themes that are staples of literature are not protected." *Cavalier*, 297 F.3d at 823. Similarly, "situations and incidents that flow necessarily or naturally from a basic plot premise" cannot be the basis for a finding of infringement. *Id.* "Such *scènes à faire* are more common in literary or dramatic works, in which certain themes or character types flow directly from common plot ideas." *Erickson*, 839 F. Supp. 2d at 1138. After filtering out the unprotectable elements, courts focus on "articulable similarities between the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events" in the two works. *Kouf*, 16 F.3d at 1045 (quotation marks omitted). The Ninth Circuit is "particularly cautious where [a] list emphasizes random similarities scattered throughout the works." *Litchfield v. Spielberg*, 736 F.2d 1352, 1356 (9th Cir. 1984).

**1. Plot and Sequence of Events**

Most of the similarities between the works that Plaintiff identifies are not protected by copyright law. For example, a protagonist of meager means who gains wealth and fame but in exchange loses joy and happiness is a general plot premise common in literary works. *See Berkic v. Crichton*, 761 F.2d 1289, 1293 (9th Cir. 1985) ("General plot ideas are not protected by copyright law."); *Esplanade Prods., Inc. v. Walt Disney Co.*, No. CV 17-02185-MWF (JCx), 2017 WL 5635027, at *9 (C.D. Cal. Nov. 8 2017) (finding "a well-trodden 'rags to riches' story arc" not protectable); *Benjamin v. Walt Disney Co.*, No. CV 05-2280GPS, 2007 WL 1655783, at *6 (C.D. Cal. June 5, 2007) (finding the idea of "females that have escaped their humble past to pursue their dreams of working and living in the big city" unprotectable). Further, both works contain several scenes that flow naturally from this basic premise: (1) both protagonists gain fame and wealth; (2) both protagonists are emulated by others; (3) both feel empty inside after

focusing solely on the newfound fame and wealth; (4) both protagonists discard items that symbolize their frustration with their predicament; (5) both protagonists leave after recognizing the source of their discontent; and (6) both protagonists become enlightened at the end of the story. As noted above, copyright law does not protect such *scènes à faire*. *See Berkic*, 761 F.2d at 1293-94 (denying protection to "familiar scenes and themes [which] are among the very staples of modern American literature and film"). Several other alleged similarities Plaintiff identifies (e.g., characters standing close together, flowers with seven petals, and books stacked on top of each other) are not original expressions subject to copyright protection. *See* 17 U.S.C. § 102(b) ("In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery[.]"); *Rentmeester*, 883 F.3d at 1123 (holding that Nike's Jumpman logo is not substantially similar to the plaintiff's photograph of Michael Jordan, and noting that the photographer "cannot claim an exclusive right to ideas or concepts at that level of generality" because "[p]ermitting him to claim such a right would withdraw those ideas or concepts from the 'stock of materials' available to other artists"); *Erickson*, 839 F. Supp. 2d at 1136 ("[I]t is axiomatic that a copyright only protects expression, not the idea behind the expression.").

After disregarding the unprotected elements, the Court finds that the two works contain dissimilar plots. Pure at Heart examines the life of Lukus Loo, starting with his humble beginnings as a curious but tormented child. Eventually, Lukus Loo goes to college, becomes king, leaves his kingdom, and dies trying to save his dog. The flower growing from his head occurs in the middle of, and is incidental to, the plot.

By contrast, the flower growing out of Mayzie's head operates as the central idea of Defendants' plot, triggering the unfolding adventure. Notably, at the end of the story, Mayzie

does not meet a premature death, but instead winds up happily back in class and learns to live with the daisy on her head.

The Court finds that there is no substantial similarity in the plots or sequence of events warranting a finding of copyright infringement, because the plots are dramatically different from one another, and because any similarities are, in fact, unprotectable *scènes à faire*.

**2. Theme and Mood**

At a very high level of abstraction, both stories communicate a similar theme: money and fame does not buy happiness. Stock themes, however, do not receive protection. *See Cavalier*, 297 F.3d at 828 ("The themes of teaching children to have confidence, to overcome their fears, and to try are not only too general to be protected but are also standard topics in children's literature."); *Basile v. Warner Bros. Entm't, Inc.*, No. CV 15-5242-DMG (MRWx), 2016 WL 5867432, at *8 (C.D. Cal. Jan. 4, 2016) ("General themes such as human origin and good-versus-evil are familiar stock themes that may not serve as grounds for substantial similarity.").

In any event, the mood of the two works is very different. Pure at Heart operates in a gloomy tenor, telling the sad story of a despondent boy who, although pure of heart, suffers a tragic fate. Plaintiff's work offers no moments of levity, maintaining a dark and dour tone. Conversely, Daisy-Head Mayzie is a light, airy story that adheres to the sanitized nature of many children's books. While Daisy briefly fears that nobody loves her, her fear quickly subsides when she counts the daisy petals atop her head. The stark difference in mood is evident in the excerpts below:



(Compl., Ex. 1, at 122) (depicting Lukus Loo's funeral at the end of the story).



(Cunningham Decl. Ex. 1, at 52) (depicting Daisy learning to live with the flower on her head at the end of the story).

In light of the foregoing, the Court concludes that the theme and mood of the two works are not substantially similar.

///

**3. Characters and Dialogue**

The characters and dialogue of the two works are also strikingly dissimilar. Pure at Heart features only three distinct characters: (1) Lukus Loo; (2) a philosopher named Plutus Plutarch; and (3) Lukus' dog. Daisy-Head Mayzie features several characters: Daisy, her teacher, the school principal, a florist, a doctor, the mayor, a talent agent, and the Cat in the Hat as narrator.

As to characters, Plaintiff alleges that Mayzie's school principal is a counterpart to Plutus, and points to other alleged similarities in the characters, namely the presence of a silent animal friend and a florist. The only similarity between Plutus and the school principal is that they are both learned figures, which is a highly abstract similarity. Furthermore, contrary to Plaintiff's allegation, his book does not appear to include a florist character, and to the extent that Plaintiff alleges a similarity between Lukus' dog and the Cat in the Hat, the Court finds no actionable similarities. Plaintiff also alleges that the two protagonists share similar names, but Mayzie McGrew and Lukus Loo are not similar other than the fact they feature alliteration, which is common in children's literature (*see, e.g.*, Mickey Mouse, Bugs Bunny, Woody Woodpecker).

As to dialogue, Plaintiff's argument that the two works contain the phrase "[a]nd these are the words that," cannot support a claim of infringement because that is a common phrase. *See* 37 C.F.R. § 202.1(a) (classifying "[w]ords and short phrases" as not subject to copyright); *see also Olson v. Tenney*, 466 F. Supp. 2d 1230, 1238 (D. Or. 2006) (holding that words, phrases, metaphors, and clichéd language in a novel were not subject to copyright protection); *Lewinson v. Holt*, 659 F. Supp. 2d 547, 568 (S.D.N.Y. 2009) ("[I]t is axiomatic that words, short phrases, titles, and slogans are not subject to copyright[.]").

**4. Summary**

Despite isolated and unprotected similarities, the Court finds that the two works tell very different stories with distinct moods and unique characters, and therefore the works lack substantial similarity as a matter of law. *See Funky Films*, 462 F.3d at 1081 ("At a very high level of generality, both works share certain plot similarities: the family-run funeral home, the father's death, and the return of the 'prodigal son,' who assists his brother in maintaining the family business. But '[g]eneral plot ideas are not protected by copyright law; they remain forever the common property of artistic mankind[.] Consequently, the two works are not substantially similar."). As a result, Plaintiff cannot satisfy the extrinsic test, and his copyright infringement claim should be dismissed.

**B. Leave to Amend**

Defendants ask the Court to dismiss Plaintiff's claim with prejudice. "Leave to amend should be granted unless the pleading could not possibly be cured by the allegation of other facts, and should be granted more liberally to *pro se* plaintiffs." *McQuillion v. Schwarzenegger*, 369 F.3d 1091, 1099 (9th Cir. 2004) (citations and quotation marks omitted). However, "[a] district court acts within its discretion to deny leave to amend when amendment would be futile." *Godwin v. Christianson*, 594 F. App'x 427, 428 (9th Cir. 2015) (citation omitted).

The Court recommends that the district judge dismiss Plaintiff's copyright claim with prejudice, because no additional facts could support the claim that the two works are substantially similar and any amendment would be futile. *See Mandeville-Anthony v. Walt Disney Co.*, No. CV-11-2137, 2012 WL 4017785, at *4-5 (C.D. Cal. July 28, 2012) (dismissing without leave to amend where works were not substantially similar as a matter of law); *Campbell v. Walt Disney Co.*, 718 F. Supp. 2d 1108, 1116 (N.D. Cal. 2010) (same).

## CONCLUSION

For the foregoing reasons, the Court recommends that the district judge GRANT Defendants' motions to dismiss (ECF No. 14 and 20), and dismiss Plaintiff's complaint with prejudice.[2]

## SCHEDULING ORDER

The Court will refer its Findings and Recommendation to a district judge. Objections, if any, are due within fourteen (14) days. If no objections are filed, the Findings and Recommendation will go under advisement on that date. If objections are filed, a response is due within fourteen (14) days. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 22nd day of May, 2018.

Stacie F. Beckerman

STACIE F. BECKERMAN
United States Magistrate Judge

[2] In its motion, PRH asks the Court to award attorney's fees and costs pursuant to 17 U.S.C. § 505. (PRH's Mot. 28.) If the district judge adopts these Findings and Recommendation, Defendants may file a motion for an award of attorney's fees and costs.